**In re REAPPORTIONMENT OF THE COLORADO GENERAL ASSEMBLY.**

No. 01SA386.

Supreme Court of Colorado,
En Banc.

Feb. 22, 2002.

Holme Roberts & Owen, LLP, Daniel J. Dunn, Manuel L. Martinez, Richard F. Rodriguez, Colorado Reapportionment Commission, Rebecca C. Lennahan, Jeremiah B. Barry, Denver, Colorado, Attorneys for the Proponent Colorado Reapportionment Commission.

Davis Graham & Stubbs LLP, Gale T. Miller, Denver, Colorado, Attorneys for Proponents Jennie Sanchez, Adeline Sanchez and Debra Cassanova.

Berenbaum, Weinshienk & Eason, P.C., Michael J. Belo, Martin D. Buckley, Denver, Colorado, Attorneys for Proponent Colorado AFL–CIO.

Berenbaum, Weinshienk & Eason, P.C., Charles A. Bewley, Denver, Colorado, Attorneys for Proponent Colorado Metro Citizens for Fair Reapportionment.

John H. Vigil, pro se Arvada, Colorado, Representing Proponent John H. Vigil (Adams County Citizen).

Trimble, Tate & Nulan, P.C., Penfield W. Tate III, Lydia M. Tate, Denver, Colorado, Attorneys for Proponent Blacks for Fair Reapportionment.

Rothgerber Johnson & Lyons LLP, James M. Lyons, Douglas B. Tumminello, Thomas M. Rogers III, Denver, Colorado, Attorneys for Proponents Stan Matsunaka, President of the Colorado State Senate; Ed Perlmutter, President Pro Tem of the Colorado State Senate; and Bill Thiebaut, Majority Leader of the Colorado State Senate.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, Burke & Neuwirth, P.C., Dean S. Neuwirth, Denver, Colorado, Attorneys for Proponent Timothy D. Knaus, Chairman of the Colorado State Democratic Party.

Ballard Spahr Andrews & Ingersoll, LLP, A. Thomas Downey, Denver, Colorado, Attorneys for Proponent Dan Grossman, Colorado House Minority Leader.

LeBoeuf, Lamb, Greene & MacRae, LLP, Robert N. Miller, Stephanie E. Dunn, Michael D. Smith, Denver, Colorado, Attorneys for Opposers Jeffrey M. Wells, Senator Mark D. Hillman, Richard P. "Sandy" Hume, Representative Mark Paschall and Heather M. Witwer (Colorado Reapportionment Commission Members).

Bullock Law Office, LLC, James R. Bullock, La Junta, Colorado, Attorneys for Opposers Estelle Thaller and Dan Sandoval.

Shawn Mitchell, Broomfield, Colorado, Mendenhall & Malouff, LLP, H. Barton Mendenhall, Rocky Ford, Colorado, Attorneys for Opposers Steve Olstad, James Martinez and Karen Nelson (Broomfield citizens).

John Martin, Chairman Commissioner, pro se, Walt Stowe, Commissioner, pro se, Larry McCown, Commissioner, pro se, Don K. Deford, Glenwood Springs, Colorado, Attorney for Opposer Garfield County Board of County Commissioners.

Luis A. Corchado, Littleton, Colorado, Attorney for Opposer Colorado Hispanic Bar Association.

Hale Hackstaff Tymkovich, LLP, Allan L. Hale, Richard A. Westfall, Richard W. Dailey, Scott E. Gessler, Denver, Colorado, Attorneys for Opposers Betty Chronic, Richard P. Hume, William Swenson and Betty Swenson.

Hale Hackstaff Tymkovich, LLP, Allan L. Hale, Richard A. Westfall, Richard W. Dailey, Scott E. Gessler, Denver, Colorado, Attorneys for Opposers Richard P. Hume, Betty Chronic and William Berens (Boulder County Citizens).

Robert S. Gardner, Colorado Springs, Colorado, Attorney for Opposers Mark Sessions, Willie H. Breazell Sr., Lionel Rivera, Charles D. Broerman and Sarah Jack (El Paso County Citizens).

Susan Fey, pro se, Crestone, Colorado, Representing Opposers Towns of Crestone and Villa Grove.

Friedlob Sanderson Paulson & Tourtillott, P.C., Richard C. Kaufman, Christopher R. Paulson, Denver, Colorado, Attorneys for Opposers John Brackney, Andre Suharka and Citizens for Constitutional Maps.

Cathie Zarlingo, President, pro se, Mary K. Kalenian, Secretary, pro se, Grand Junction, Colorado, Representing Opposer Mesa County Valley School District No. 51 Board of Education.

Mesa County Attorney's Office, Maurice Lyle Dechant, Mesa County Attorney, Angela M. Luedtke, Assistant Mesa County Attorney, Grand Junction, Colorado, Attorneys for Opposer Mesa County Board of County Commissioners.

Reid & Scheffel, Mark H. Scheffel, Thomas J. Burke, Parker, Colorado, Attorneys for Opposer Douglas/Elbert Citizens for Fair State Senate Representation.

Richard O. Schroeder, Highlands Ranch, Colorado, Attorney for Opposer Don Lee.

Williams, Turner & Holmes, P.C., Mark A. Hermundstad, Grand Junction, Colorado, Attorneys for Opposer Ute Water Conservancy District.

R. Bruce Smith, Town Administrator, pro se, Collbran, Colorado, Representing Opposer Town of Collbran.

Carter & Sands, P.C., Stephen L. Carter, Rifle, Colorado, Attorneys for Opposer Town of Palisade.

Carter & Sands, P.C., Stephen L. Carter, Rifle, Colorado, Attorneys for Opposer City of Fruita.

Doyle, Zakhem, Suhre, & Lilly, LLC, Brett R. Lilly, John S. Zakhem, Denver, Colorado, Attorneys for Opposer Beth Gallegos (Adams County Citizen).

Arthur LeMelle, pro se, Gateway, Colorado, Representing Opposer Arthur LeMelle (citizen of the Town of Gateway).

Phil Mueller, President, pro se, Franktown, Colorado, Representing Opposer Elbert/Douglas County Livestock Association.

Joe Kline, Chairman, pro se, Glenwood Springs, Colorado, Representing Opposer Garfield County Republicans.

Raymond E. Smith, Chairman, pro se, Kremmling, Colorado, Representing Opposer Grand County Republicans.

John Ponikvar, Vice–Chairman, pro se, Craig, Colorado, Representing Opposer Moffat County Republican Central Committee.

Shirley J. Black, Chairman, pro se, Walden, Colorado, Representing Opposer Jackson County Republican Central Committee.

H. Olive Morton, Chair, pro se, Steamboat Springs, Colorado, Representing Opposer Routt County Republican Central Committee.

Jack Taylor, Colorado State Senator, pro se, Steamboat Springs, Representing Opposer Jack Taylor.

Don Davis, pro se, Ruby Davis, pro se, Clifton, Colorado, Representing Opposers Don Davis and Ruby Davis.

Merilee O'Neal, Chairperson, pro se, Ed O'Leary, Chairperson, pro se, Representing Lake County Republicans and Lake County Democrats, respectively.

Justice HOBBS delivered the opinion of the court.

In this original proceeding, the Colorado Reapportionment Commission (Commission) has resubmitted to us its decennial Apportionment Plan (Readopted Plan) for the reapportionment of Colorado General Assembly house and senate districts, based on the year 2000 federal census, as required under Article V, Section 48(1)(e) of the Colorado Constitution. We approve the Final 2002 Reapportionment Plan.

I.

In our prior opinion, we disapproved the Adopted Plan submitted by the Commission and returned the plan to the Commission for revision,.modification, and resubmission. *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d 1237 (Colo. 2002). We held that the Adopted Plan did not comply with the criteria of Article V, Sections 46 and 47, of the Colorado Constitution because: (1) it was not "sufficiently attentive to county boundaries to meet the requirement of section

47(2)," *In re Reapportionment of the Colo. Gen. Assembly,* 647 P.2d 191, 195 (Colo.1982)[hereinafter *"In re Reapportionment 82"*]; and (2) it was not accompanied by "an adequate factual showing that less drastic alternatives could not have. satisfied the equal population requirement of the Colorado Constitution," *In re Reapportionment of the Colo. Gen. Assembly,* 828 P.2d 185, 195–96 (Colo.1992)[hereinafter *"In re Reapportionment 92–I"*]. For example, the Adopted Plan denied whole senate districts to Boulder, Douglas, Jefferson, and Pueblo counties for which they qualify based on the year 2000 census data and the Commission's ideal district projection. In addition, the Commission had not advanced an adequate explanation for division of Adams, Arapahoe, and Mesa counties and the cities of Boulder and Pueblo between senate districts. The Commission subsequently reconvened on three separate occasions, considering a number· of alternative senate reapportionment maps and amendments. On February 7, 2002, the Commission approved the Readopted Plan on a nine to two vote. The Commission resubmitted the Readopted Plan to this Court on February 12, 2002. We accepted objections to the Readopted Plan through February 19, 2002. The Commission submitted its Reply Brief to this Court on February 20, 2002.

## II.

We approve the Readopted Plan as the Final Plan. The Commission has followed the procedures and applied the criteria of federal and Colorado law in adopting its 2002 Final Reapportionment Plan for Colorado General Assembly house and senate districts.

### A. Review Criteria

The federal and state constitutional criteria that guide the Commission and this Court, in order of their applied priority are: (1) the Fourteenth Amendment Equal Protection Clause and the Fifteenth Amendment; (2) section 2 of the Voting Rights Act; (3) article V, section 46 (equality of population of districts in each house); (4) article V, section 47(2)(districts not to cross county lines except to meet. section 46 requirements and the number of cities and towns contained in more than one district minimized); (5) article V, section 47(1)(each district to be as compact as possible and to consist of contiguous whole general election precincts); and (6) article V, section 47(3) (preservation of communities of interest within a district).

*In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d 1237,1247 (Colo. 2002) (citing *In re Reapportionment 92–I,* 828 P.2d at 190). We review the reapportionment plan and Commission's process to ensure that the Commission substantively applied all six of the criteria and procedurally applied the criteria in order of their stated preference in adopting the final reapportionment plan for the state of Colorado. "The Commission may not apply the lesser criteria over the greater criteria, but it may use the lesser criteria after satisfying the greater criteria. The Commission resolves conflicts by applying the criteria in preferential order, articulating on submittal to us how the Adopted Plan reflects the criteria." *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d at 1247 (Colo.·2002) (citations omitted).

### B. Plan Compliance

We conclude that the Readopted Plan satisfies the six constitutional criteria enumerated in our decision. *Id.* 45 P.3d at 1247. The Readopted Plan provides whole senate districts to Boulder, Douglas, Jefferson, and Pueblo counties for which they qualify based on the year 2000 census data and the Commission's ideal district projection. The Readopted Plan provides Arapahoe County with four whole senate districts, the number for which Arapahoe County almost qualified using the year 2000 federal census data. Mesa County is no longer divided in the Readopted Plan; a portion of Garfield County was added to it to complete Mesa County's senate district. The cities of Boulder and Pueblo are no longer divided between senate districts in the Readopted Plan.

The Readopted Plan contains divisions of Adams County between senate districts and divisions of the City of Boulder between house districts. However, the Commission

has advanced adequate explanations for the divisions of Adams County and the City of Boulder, and we determine that the divisions do not offend the constitution.

The following chart submitted by the Commission illustrates the changes in the number of whole senate district allotments between the Adopted and Readopted Plan. The chart also reflects year 2000 federal census population numbers which have been adjusted to reflect the subsequent creation of the City and County of Broomfield.

| County | Population | Senate District Qualification | Whole Districts Adopted Plan | Whole Districts Readopted Plan |
|---|---|---|---|---|
| Adams | 348,618 | 2.84 | 2 | 2 |
| Arapahoe | 487,967 | 3.97 | 3 | 4 |
| Boulder | 269,814 | 2.20 | 1 | 2 |
| Denver | 554,636 | 4.51 | 4 | 4 |
| Douglas | 175,766 | 1.43 | 0 | 1 |
| El Paso | 516,929 | 4.21 | 4 | 4 |
| Jefferson | 525,507 | 4.28 | 3 | 4 |
| Larimer | 251,494 | 2.05 | 2 | 2 |
| Pueblo | 141,472 | 1.15 | 0 | 1 |
| Weld | 180,926 | 1.47 | 1 | 1 |

■ The Adopted Plan divided Douglas County between Senate Districts 2 and 30, thus denying Douglas County the one whole senate district for which it qualified based upon its population. The Readopted Plan provides Douglas County with one whole senate district entirely within its boundaries in Senate District 30. The Adopted Plan also divided Pueblo County between Senate Districts 3 and 4, thus denying Pueblo County the one whole senate district for which it qualified based upon its population. The Readopted Plan provides Pueblo County with one whole senate district entirely within its boundaries in Senate District 3.

The Adopted Plan divided Boulder County between Senate Districts 18 and 19, thus providing Boulder County with only one of the two whole senate districts for which it qualified based upon its population. The Readopted Plan provides Boulder County with two whole senate districts entirely within its boundaries in Senate Districts 17 and 18. The Adopted Plan also divided Jefferson County between Senate Districts 19 and 23, thus providing Jefferson County with only three of the four whole senate districts for which it qualified based upon its population. The Readopted Plan provides Jefferson County with four whole senate districts within its boundaries (Senate Districts 19, 20, 21 and 22).

The Adopted Plan provided Arapahoe County with only three whole senate districts within its boundaries, even though it qualified for .97 of an additional senate district. The Readopted Plan provides Arapahoe County with four whole senate districts within its boundaries (Senate Districts 26, 27, 28 and 29). Although Mesa County qualified for .95 of a senate district, the Adopted Plan split Mesa County between Senate Districts 7 and 8. In the Readopted Plan, Mesa County is contained entirely within Senate District 7.

The Adopted Plan divided the City of Pueblo into Senate Districts 3 and 4 and the City of Boulder into Senate Districts 18 and 19. The City of Pueblo is contained entirely within Senate District 3 in the Readopted Plan. The City of Boulder is now contained entirely within Senate District 18.

Therefore, the Commission has resubmitted a Readopted Plan which complies with the criteria of Article V, Sections 46 and 47, of the Colorado Constitution and is "sufficiently attentive to county boundaries to meet the requirement of section 47(2)." *In re Reapportionment 82*, 647 P.2d at 195.

■ The Commission was not able to avoid the divisions of Adams County. The Adopted Plan provided Adams County with only two whole senate districts within its

boundaries, although it qualified for .96 of an additional senate district. The Readopted Plan continues to provide Adams County with two whole senate districts within its boundaries, Senate Districts 24 and 25. The Commission has advanced the following explanation for this result:

> When the City and County of Broomfield was created, it included territory containing 15,239 people that was formerly part of Adams County. After deducting this population, the number of people in Adams County is 348,618, which translates to 2.84 senate seats. *Therefore, it was not possible to form a third district wholly within Adams County and stay within the population variance allowed by Article V, Section 46.* As a result, Adams County contains only two whole districts (24 and 25) and two partial districts (23 and 31). See *In re Reapportionment 2002–I* p. 10. One of two partial districts resulted from the need to complete the partial district remaining in Denver after Arapahoe County was redrawn to include four whole districts. See note 5, *supra.* The other partial district in Adams County resulted from the need to complete district 23 (which contains Broomfield) after the Commission redrew Boulder County to include the maximum number of whole districts. See *id.* pp. 10, 11.

Revised Final Plan for Reapportionment of the Colorado General Assembly, at 5 (emphasis added). We conclude that the Commission has provided "an adequate factual showing that less drastic alternatives could not have satisfied the equal population requirement of the Colorado Constitution," *In re Reapportionment 92,* 828 P.2d at 195–96. Therefore, we find that the divisions of Adams County are constitutional.

█ In our prior opinion, we stated that the Commission should address on remand the divisions of the City of Boulder between House Districts 10, 11 and 13 in the Adopted Plan. *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d at 1254, n. 11 (Colo. 2002). The Readopted Plan maintains the divisions of the City of Boulder between House Districts 10, 11 and 13 as they were drawn in the Adopted Plan. Betty Chronic, Richard P. Hume, William Swenson and Betty Swenson reassert their objection to the division of the City of Boulder between house districts in the Readopted Plan. The Commission advanced the following explanation in support of the decision to divide the City of Boulder between house districts:

> The Commission has re-examined the objection to the division of the City of Boulder and has concluded to keep house districts 10, 11 and 13 as they were drawn in the Adopted Plan. At the February 1, 2002 and February 7, 2002 Commission meetings, Commissioner Hume introduced and proposed a map called "Hume Boulder Amendment to House." The Hume amendment splits the same number of cities as are split in the Final Plan (two-the cities of Boulder and Longmont) and thus offers no advantage in terms of Article V, § 47(2), which provides that "the *number* of cities and towns whose territory is contained in more than one district of the same house shall be as small as possible." Colo. Const. Art. V, § 47(2)(emphasis added). In addition, the Hume amendment isolates a small segment of the population of the City of Longmont from all other Longmont residents. The Commission determined that placing this small group of Longmont residents in a district dominated by Boulder would effectively disenfranchise them. By contrast, dividing Longmont roughly evenly between two senate districts, as the Commission has done, provides Longmont residents with a more effective voice in the Legislature because they will have the ear of two senators, rather than one. The Hume amendment also fails to preserve the community of interest that the Commission found to exist between the areas of the City of Boulder and Longmont that are joined in district 11. For these and the other reasons the Commission previously identified in its reply to the objections to the Adopted Plan (see Reply at 53–57 (Jan. 3, 2002)), the Commission has concluded to keep house districts 10, 11 and 13 as they were drawn in the Adopted Plan.

Revised Final Plan for Reapportionment of the Colorado General Assembly, at 7–8. We

conclude that the Commission has provided "an adequate factual showing that less drastic alternatives could not have satisfied the equal population requirement of the Colorado Constitution," *In re Reapportionment 92,* 828 P.2d at 195–96. The Commission also utilized the community of interest criteria of Article V, Section 47(3) in making the divisions; we agree with this application of the criteria. Therefore, we find that the divisions of the City of Boulder are constitutional.

■ Article V, Section 46 of the Colorado Constitution requires that "in no event shall there be more than five percent deviation between the most populous and the least populous district in each house." The maximum population deviation of five percent is intended to make it easier to avoid splitting counties between legislative districts, and to permit the Commission to consider community of interest factors, by allowing the Commission some degree of flexibility in the population number for each district. *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d at 1244 (Colo. 2002). In our opinion, we noted that the Adopted Plan technically exceeded this constitutional limit by 0.001% and that the Commission had the opportunity on remand to address this infraction. *Id.* 45 P.3d at 1253–54. The Readopted Plan's mathematical deviation between the most and least populous senate district is 4.95%, 0.05% below the constitutional limit. Therefore, we find that the Readopted Plan complies with Article V, Section 46 of the Colorado Constitution.[1]

■ Garfield County Board of Commissioners objects to the division of Garfield County between Senate Districts 7 and 8 in the Readopted Final Plan. The Commission offered the following explanation for the division of Garfield County between senate districts:

> The Adopted Plan for Senate district 8 split Mesa and Eagle Counties. On re-

mand, the Commission succeeded in keeping Mesa County whole, as directed by the Court's January 28, 2002 decision, *Reapportionment 2002–I,* slip op. at 40, and in eliminating the Eagle County split. Unfortunately, because Mesa County provides only enough population for .95 of a Senate district, population from an adjacent county had to be added. All adjacent counties were too large in population to be kept whole in a district with Mesa County. The Commission determined that the best option for equalizing population in the new district 8 was to push north into Garfield County to include the Town of Parachute in the district. The net effect of the Revised Final Plan is to reduce the number of county splits by one. The new district 8 does not split any municipality, and it is properly within the discretion of the Commission to decide which of the counties adjacent to Mesa County should be split.

Reply of Colorado Reapportionment Commission to Objections to Revised Final Plan, at 2–3 [hereinafter "Reply"](citations omitted). Garfield County Board of Commissioners also objects to the division of Garfield County between House Districts 57 and 61. The Commission offered the following explanation for the division of Garfield County between house districts:

> [T]he Commission drew district 56 to accommodate the public's desire to include Eagle, Lake, and Summit counties in a single district. To equalize population between districts, the Commission added population from the Roaring Fork Valley section of Eagle County and the eastern portion of Garfield County to district 61. The configuration of district 61 maintains the integrity of the City of Glenwood Springs and places the city in a district with populations that share common, economic, education, and transportation concerns. The Garfield objectors have failed to offer an alternative plan with fewer county or city splits and have failed to

---

1. In its brief, the Commission stated: "Although the Commission believes that nothing in the Colorado Constitution requires it to calculate the maximum population variance to three decimal places, the variance under the revised senate plan is 4.95 percent." Because the Readopted Plan satisfies the constitutional deviation requirement, we do not reach the issue of how many decimal points are required for the deviation calculation here.

identify any constitutional shortcomings in the Revised Final Plan.

Reply, *supra,* at 4–5 (citations omitted). We conclude that the Commission has provided "an adequate factual showing that less drastic alternatives could not have satisfied the equal population requirement of the Colorado Constitution," *In re Reapportionment 92,* 828 P.2d at 195–96, for both of these divisions. The Commission also utilized the community of interest criteria of Article V, Section 47(3) in making the divisions; we agree with this application of the criteria. We find that the divisions of Garfield County are constitutional.

 Grand County Republicans object to Senate Districts 8 and 16 in the Readopted Plan; they would prefer that Grand County be contained within Senate District 8. The Commission offered the following explanation for the location of Grand County in the Readopted Plan:

> The placement of Grand County in Senate district 16 was driven by the need to create four whole Senate districts in Jefferson County and two whole Senate districts in Boulder County, as directed by the Court.... The objectors' alternative of putting Grand County in Senate district 8 and equalizing population by adding the eastern portion of Eagle County to Senate district 16 would cause an additional county split on the Western Slope in violation of Article V, § 47(2) and would elevate the communities of interest criterion over the criterion of keeping counties whole, in violation of the hierarchy mandated by the Constitution as interpreted by this Court. The requirement of keeping counties whole trumps the requirement of preserving communities of interest.

Reply, *supra,* at 1–2. Lake County Republicans and Lake County Democrats object to the placement of Lake County in Senate District 4. These objections address decisions which are within the Commission's discretion. "Issues concerning compactness, communities of interest, and which plan is preferred by a certain group of citizens, must remain within the scope of the Commission's discretion. We do not redraw the reapportionment map for the Commission." *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d at 1247 (Colo. 2002).

## II.

Accordingly, we uphold and accept the Commission's action and approve the Readopted Plan as the Final 2002 Reapportionment Plan for Colorado General Assembly districts. We order the Commission to file the Final Plan with the Secretary of State as expeditiously as practicable.

Justice BENDER concurs, and Chief Justice MULLARKEY and Justice MARTINEZ join in the concurrence.

Justice BENDER, concurring:

I agree that the resubmitted plan meets the constitutional criteria as articulated by the court today. However, as stated in my dissent to *In re Reapportionment of the Colo. Gen. Assembly,* 45 P.3d 1237 (Colo. 2002), I would have approved the original plan submitted by the Commission.

I am authorized to say that Chief Justice MULLARKEY and Justice MARTINEZ join in this concurrence.